UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:13-cv-24571-XXXX

CREDIT SUISSE SECURITIES (USA), LLC,

Petitioner,

v.

CRL MANAGEMENT, LLC,

Respondent.

---

## MOTION TO VACATE ARBITRATION AWARD

Pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 10, Respondent CRL Management, LLC (CRL) moves to vacate the arbitration award issued by an arbitration panel in *Credit Suisse Securities, LLC v. CRL Management, LLC*, FINRA Case No. 11-04043 (the Arbitration). In support of the Motion, CRL states:

## INTRODUCTION

This case is about a broker-dealer that failed to disclose material information to its customer in violation of his fiduciary obligations. As CRL's broker-dealer and agent of more than seven (7) years, Credit Suisse had a duty to disclose material information it possessed concerning the value of the stock it sold to CRL. Despite this clearly defined obligation, Credit Suisse failed to disclose material information that it learned of regarding the decline in book value[1] of the Invesco Mortgage Capital (Invesco) shares prior to completing the sale of these shares to CRL. Because the law is clear that Credit Suisse had a duty to disclose material information to CRL and the facts are undisputed that it failed to disclose this information, there is no factual basis for the award and the arbitration panel departed from a clearly defined

[1] Book value is the value of an asset or security entered in a company's books.

principle of law when it found in favor of Credit Suisse on its breach of contract claim. Accordingly, this Court should enter an order vacating the award. Exhibit A – Arbitration Award.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 21, 2011, Credit Suisse initiated the Arbitration by filing a Statement of Claim against CRL. Ex. B - Statement of Claim (without exhibits). In the Statement of Claim, Credit Suisse alleged a cause of action against CRL for breach of contract. Ex. A. Specifically, Credit Suisse claimed that CRL was liable to it in the amount of $1,792,949.31 relating to CRL's failure to pay for the purchase of shares of Invesco. Ex. B. On February 7, 2012, CRL filed its Statement of Answer. Ex. C – Statement of Answer. In its Statement of Answer, CRL averred, among other things, that the contract was unenforceable because Credit Suisse failed to disclose material information to CRL regarding the Invesco Mortgage Capital, Inc. ("Invesco") shares prior to confirming the sales. Ex. C. The relevant and undisputed facts leading up to this dispute are set forth below.[2]

On July 11, 2011, CRL placed a non-binding reverse inquiry to purchase shares in Invesco.[3] At the time, no offering existed. Thereafter, by no later than August 17, 2011, Credit Suisse agreed to act as co-managing underwriter for an add-on offering for Invesco shares.

At 4:14 p.m. on August 17, 2011, Invesco filed a preliminary prospectus, disclosing the decline in book value of the common stock. The Preliminary Prospectus provided in pertinent part:

---

[2] Due to the constraints of the parties' confidentiality agreement, CRL was unable to recite all of the specific facts that further support this Motion to Vacate Arbitration Award. The exhibits establishing these facts, which CRL was prevented from filing pursuant to the confidentiality agreement, will be filed under seal as required by the confidentiality agreement.

[3] A reverse inquiry is an indication that if a company is going to offer shares in an offering, the investor would be interested in purchasing shares.

> *Our book value per share of common stock at July 31, 2011 was $18.39, compared to $19.34 at June 30, 2011*, in each case on a fully diluted basis. The July 31, 2011 book value includes our retained earnings for the month of July 2011. This decline in our book value was primarily due to the change in valuation of our interest rate hedges. *Since July 31, 2011, swap rates have experienced further declines and the markets in which we participate have experienced increased volatility, which could negatively impact our book value.*

Two minutes later, at 4:16 p.m., Credit Suisse called Ray Langston, a managing member of CRL, to solicit an order from CRL to purchase Invesco shares. Notably, Credit Suisse failed to disclose to CRL the material information it knew through, among other things, the Preliminary Prospectus regarding the decline in book value of the Invesco shares or Invesco's expectation that the book value will continue to drop.

At 4:20 p.m., Invesco filed a Form 8-K regarding the declining book value of the Invesco shares. The Form 8-K provided in relevant part as follows:

> In connection with Invesco Mortgage Capital Inc.'s (the "Company") plan to make a public offering of its common stock, the Company disclosed in its preliminary prospectus, dated August 17, 2011, that *its book value per share of common stock at July 31, 2011 was $18.39, compared to $19.34 at June 30, 2011,* in each case on a fully diluted basis. The July 31, 2011 book value includes the Company's retained earnings for the month July 2011. This decline in the Company's book value was primarily due to the change in the valuation of the Company's interest rate hedges. Since July 31, 2011, *swap rates have experienced further declines and the markets in which the Company participates have experienced increased volatility, which could negatively impact the Company's book value.*

Ex. G – 8-K (emphasis added). At that same time the Form 8-K was issued, Credit Suisse called Mr. Langston to solicit a larger order from CRL, but once again failed to disclose the decline in book value, the Form 8-K filing, the Preliminary Prospectus or any information contained in such documents.

Credit Suisse left CRL a message on the evening of August 17, 2011, stating that CRL was allocated 2,000,000 shares of Invesco. Although Credit Suisse called CRL twice between 8:00 a.m. and 9:30 a.m. the next day, it still never disclosed the material information regarding

the drop in book value of the Invesco shares during either call or that the book value could continue to decline. On August 18, 2011, CRL learned, through an outside source, about the material disclosure concerning the decline in book value of the Invesco shares. After learning of this information, Mr. Langston notified Credit Suisse that CRL was cancelling the trade.

At the final hearing, CRL argued that the agreement to purchase the Invesco shares was unenforceable due to Credit Suisse's failure to disclose material information, including information regarding the drop in book value of the Invesco shares and likelihood of a continued decline in value. CRL showed, through undisputed testimony, that disclosure of the information contained in the Form 8-K would have provided CRL information necessary to make its investment decision, which was based on actual book value. The information regarding the actual book value of the stock was material because Invesco historically traded at book value. Therefore, a drop in the price of the book value of the shares meant a corresponding drop in the value of the shares. Not only was the stock priced higher than its actual value, but it was expected to continue to decline in value. It is therefore axiomatic that had Credit Suisse disclosed this information to CRL prior to confirming the sale, CRL would not have agreed to the purchase. Because the evidence is undisputed that the information contained in the Preliminary Prospectus and Form 8-K, which information was known to Credit Suisse at the time of its sale to CRL, was material and the law is clear that Credit Suisse had a duty to disclose material information, this Court should vacate the arbitration award and enter a judgment in favor of CRL.

## LEGAL ANALYSIS

### A. Legal Standard for Motion to Vacate

Under federal and state law, an arbitration award must be vacated if there is no factual or reasonable basis for the award. *Essex Cement Co. v. Italmare, S.p.A.*, 763 F. Supp. 55, 58 (S.D.N.Y. 1991) ("Although this ground is not listed in either Section 10 of the Federal Arbitration Act or Article V of the Convention, courts have stated that an arbitration award should be vacated if it is irrational and without any factual basis."); *World Invest Corp. v. Breen*, 684 So. 2d 221, 222-23 (Fla. 4th DCA 1996) (recognizing that although arbitration awards are accorded great deference, they may be vacated on the ground that there is no rational or factual basis on which the arbitrator could have relied); *see, e.g., Storer Broad. Co. v. Am. Fed'n of Television & Radio Artists,* 600 F.2d 45 (6th Cir.1979); *Swift Indus., Inc. v. Botany Indus., Inc.,* 466 F.2d 1125, 1131 (3d Cir.1972).

In addition, an arbitral decision must be vacated when an arbitrator has exhibited a "manifest disregard of law." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 208 (2d Cir. 2002) (citing *Wilko v. Swan,* 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *overruled on other grounds, Rodriguez de Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). "[M]anifest disregard of the law . . . might be present when arbitrators understand and correctly state the law, but proceed to disregard the same." *Bradford Dyeing Assoc. v. J. Stog Tech GMBH,* 765 A.2d 1226, 1232 (R.I. 2001) (quoting *Westminster Constr. Corp. v. PPG Indus.*, 119 R.I. at 211, 376 A.2d at 711). Before vacating an arbitration award for "manifest disregard of the law," a court must find that: (i) "the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether"; and (ii) "the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."

*Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 28 (2d Cir.2000) (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir.1997)).

Manifest disregard of the law is limited to those situations, like the present one, "where the record does indicate that the Panel was encouraged to disregard the law but does not show that the Panel rejected such a plea." *Liberty Secs. Corp. v. Fetcho*, 114 F. Supp. 2d 1319, 1323 (S.D. Fla. 2000). In *Montes v. Shearson Lehman Bros*, the Eleventh Circuit found that one of the parties had conceded that its position was unsupported by the law, but encouraged the Panel that it did not have to apply the law and that it should enter an award in its favor regardless. 128 F. 3d 1456, 1461 (11th Cir. 1997). On appeal, the Eleventh Circuit reversed the district court's affirmance of the arbitration award "in light of the express urging to deliberately disregard the law, the lack of support in the facts for the ruling and the absence in the decision, or otherwise in the record, indicating that the arbitrators rejected [Respondent's] plea to manifestly disregard the law." *Id.*

As in *Montes*, the arbitration award in this case should be vacated because there was no factual basis for the award and the arbitrators disregarded a clearly defined principle of law applicable to the case before them. The undisputed facts in this case are that Credit Suisse knew of the decline in book value of the Invesco shares prior to confirming the sale with CRL. It is also undisputed that the information regarding the book value was material. Finally, the law provides that Credit Suisse, as a broker-dealer, had a duty to disclose material information in its possession to its customer CRL, prior to completing the sale of the Invesco shares to CRL and that the contract is unenforceable because of this omission.

**B. <u>Credit Suisse Had a Duty to Disclose the Material Information About the Decline in Book Value</u>**

It is well-established that in a non-discretionary account, a broker has explicit duties, including, but not limited to, disclosing information which would affect the "best execution" of a trade and value, acting with reasonable care, obtaining authorization for the transaction and executing requested trades on a transaction by transaction basis, among other duties. *SEC v. Goldman Sachs & Co.*, 790 F. Supp. 2d 147 (S.D.N.Y. 2011) (finding that the SEC stated viable claims for misrepresentation against Goldman Sachs broker for misleading customers when he failed to disclose material information which affected the value of the securities and the risk associated with the transactions); *Geman v. SEC*, 334 F.3d 1183 (10th Cir. 2003) (holding that broker has duty to disclose material information about value of trade necessary for proper execution); *see also Conway v. Icahn & Co., Inc.*, 16 F.3d 504 (2d Cir. 1994) (finding that broker has duty in a non-discretionary account to provide material information necessary to obtain proper authorization for trade).

Information is material where there is a substantial likelihood that a reasonable investor would consider the information important in evaluating whether to invest. *Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) (Information is material "if there is a substantial likelihood that a reasonable [investor] would consider it important in deciding how to [invest] . . . [and] the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."); *see also Matrixx Initiatives, Inc. v. Siracusamo*, 131 S. Ct. 1309, 1321-22 (2011) (relying on materiality standard set forth in *Basic*).

Credit Suisse as broker was CRL's agent for purposes of the Invesco transaction. *See Jaksich v. Thomson McKinnon Sec., Inc.,* 582 F. Supp. 485, 502 (S.D.N.Y. 1984) ("Under New

York law, brokers maintain fiduciary duties to their customers, and the relationship between the two parties is one of principal and agent."); *see also Schenck v. Bear, Stearns & Co.*, 484 F.Supp. 937, 946 (S.D. N.Y. 1979); *Gilman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 404 N.Y.S.2d 258, 262 (Sup.Ct.1978). As CRL's agent, Credit Suisse was required to provide such information it possessed to CRL which would necessarily affect the value of the Invesco shares. *See* Restatement of Agency, 2d at § 381 ("Unless otherwise agreed, *an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him* and which, as the agent has notice, the principal would desire to have . . . .") (emphasis added); *Newton v. Merrill, Lynch, Pierce, Fenner & Smith*, 135 F.3d 266 (3d Cir. 1998) (finding that, as the agent for the customer in connection with a transaction, a broker must take all actions for the benefit of the customer in the execution of a trade, including disclosing all information that customer would deem material, consistent with the customer's implicit goal to generate profit); *De Kwiatkowski v. Bear, Stearns & Co.*. 306 F. 3d 1293, 1302 (2d Cir. 2002) (holding that a registered representative owes a duty to his clients to disclose material information when recommending an investment); *Market Reg. v. Burch*, Compl. No. 2005000324301 (July 28, 2011) (recognizing that respondent had a duty to disclose material information when recommending an investment to an investor); *see also Chiarelli v. U.S.*, 445 U.S. 222, 230 (1980) (Liability for failure to disclosure material information is "premised upon a a duty to disclose arising from a relationship of trust and confidence between parties to a transaction."); *Geman v. SEC*, 334 F.3d 1183, 1189 (10th Cir. 2003) (citing SEC Opinion at 13) ("[W]hen a firm has a fiduciary relationship with a customer, it may not execute principal trades with that customer absent full disclosure of its principal capacity, *as well as all other information that bears on the desirability of the transaction from the customer's perspective.*"(emphasis added)).

The decline in book value of the Invesco shares was material information Credit Suisse was required to disclose to CRL. This information was material to the decision to purchase the Invesco shares, because Invesco shares generally trade at book value. Accordingly, any decline in book value is likely to affect the price at which the shares trade. Because the book value had declined and could continue to decline, if Credit Suisse had sold the Invesco shares to CRL based on the decreased book value, the shares would have been priced and sold for almost one dollar less per share than the $18.37 share price at which Credit Suisse sold these shares to CRL. The materiality of this information was further corroborated by CRL's cancellation of the purchase immediately after learning of this information.

As a result of Credit Suisse's failure to disclose the drop in book value to CRL, the evidence showed Invesco shares were sold to CRL at nearly a dollar more per share than their actual value or approximately $1,800,000 more than their actual value. Had Credit Suisse disclosed this information to CRL, which purchased ten percent of this offering, CRL would not have purchased the Invesco shares. Credit Suisse, therefore, also violated its duty of best execution by putting its interest before those of CRL. *See Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 270 (3d Cir. 1998) (en banc) ("The duty of best execution . . . requires that a broker-dealer seek to obtain for its customer orders the most favorable terms reasonably available under the circumstances."); *Geman v. SEC*, 334 F.3d 1183, 1186 (10th Cir. 2003); ("The duty of best execution is a legal duty inherent in the relationship of a broker-dealer and its customer, arising from the duties of undivided loyalty and reasonable care under the common law of agency.").

### C. <u>**Credit Suisse Cannot Enforce the Alleged Contract Because It Failed to Perform, or the Alleged Contract Was Procured by a Material Omission and Is Therefore Void**</u>

Because Credit Suisse omitted material information affecting the value of its shares in the Invesco offering, the contract is invalid and its claim for breach of the purported contract fails as a matter of law. There is no enforceable contract because Credit Suisse failed to perform its obligation under the alleged contract to disclose material information in its possession to CRL. *See Black v. Hesse*, 869 F.2d 420, 422 (8th Cir. 1989) (citing Restatement of Contracts (2d) §14(2)). Moreover, it is well settled that a contract procured by fraud is void and cannot be enforced. *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 999 (11th Cir. 1986). Fraud in factum occurs "where there is misrepresentation of the character or essential terms of a proposed contract." *Id.* When such material terms are misrepresented, there is no manifestation of assent because the party believed he or she was agreeing to something different from what was presented. *See* Restatement of Contracts (2d) § 163, cmt. a (1981). Courts have recognized that a material omission is tantamount to a misrepresentation. Restatement of Contracts (2d) §160 (1981); *Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1315 (Pa. Super. 1991) (the elements of misrepresentation are a fraudulent misrepresentation, an intention to induce action thereby, justifiable reliance, and damages).

Credit Suisse's argument to the Panel that it had no duty to specifically disclose this information to CRL because it was disclosed in an SEC filing just before the sale was confirmed is without merit and in doing so, CRL respectfully submits, Credit Suisse encouraged the Panel to disregard the law. As the SEC recognized, filing a prospectus on Edgar *does not* "affect the obligation of filers to deliver to security holders or potential investors documents such as a prospectuses." SEC Release No. 33-7233; 34-36345; IC-21399; *see In re Fuwei Films Sec.*

*Litig.*, 634 F.Supp.2d 419, 438 (S.D.N.Y. 2009) (finding that prior publication of adverse information in connection with initial public offering which affected the book value did not relieve defendants of their duties to disclose material information to investors); *United Paperworkers Int'l. Union v. Int'l Paper Co.*, 985 F.2d 1190 (2d Cir. 1993) (finding that the mere fact that a company has filed documents with the SEC containing information relevant to a transaction does not constitute adequate disclosure in proxy contest). Therefore, Credit Suisse's claim that it was relieved of its obligation to disclose this information to its customer is without merit.

In sum, this case is about a brokerage firm that owed a fiduciary duty to its customer of over seven (7) years to disclose material information regarding shares that it sold to its customer. Instead of upholding this fiduciary obligation to its customer, however, Credit Suisse used the material information it learned of to its advantage and to CRL's detriment. If Credit Suisse had disclosed the material information, it would have sustained a loss because CRL would not have purchased the shares. Therefore, this Court should find that there is no factual or rational basis for the award and that the panel manifestly disregarded the law when it found in favor of Credit Suisse, despite being presented with the applicable case law and provided a PowerPoint presentation in closing containing the applicable law and being presented with a binder containing the pertinent case law. This manifest disregard of the law was evidenced not only by the Panel's award but also by one of the arbitrator's comments to CRL's expert during the hearing, that essentially indicated a refusal to consider the legal argument that Credit Suisse was a regulated legal entity that owed certain duties to its customers.

## CONCLUSION

Although great deference is generally afforded to arbitration awards, the federal appeals courts have recognized that an arbitration award can be vacated when an arbitration panel manifestly disregards the law and issues an award that has no rational or factual basis. *See, e.g., Montes v. Shearson Lehman Bros.*, 128 F. 3d 1456 (11th Cir. 1997) (manifest disregard of the law); *Storer Broad. Co. v. Am. Fed'n of Television & Radio Artists,* 600 F.2d 45 (6th Cir.1979) (no rational or factual basis); *Swift Indus., Inc. v. Botany Indus., Inc.,* 466 F.2d 1125, 1131 (3d Cir.1972) (no rational or factual basis). In this case, the arbitration panel was informed of the law and facts cited in this Motion but chose to disregard this law in issuing its ruling. Therefore, CRL respectfully asks that this Court vacate the arbitration award and remand this matter to FINRA for a new arbitration.

Respectfully submitted,

**BROAD AND CASSEL**
Attorneys for Respondent, CRL Management, LLC
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: 305.373.9467
Facsimile No.: 305.995.6437
DNewman@BroadandCassel.com

By: s/Daniel S. Newman
Daniel S. Newman, P.A.
Florida Bar No. 0962767

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2014, I electronically filed a true and exact copy of the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record on the following service list authorized to receive electronic notice through CM/ECF.

s/Daniel S. Newman
Daniel S. Newman, P.A.