UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:13-cv-24571-KMM

CREDIT SUISSE SECURITIES (USA) LLC,

Petitioner,

v.

CRL MANAGEMENT LLC,

Respondent.
_______________________________________/

**RESPONSE IN OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD AND REPLY IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD**

Petitioner Credit Suisse Securities (USA) LLC ("Credit Suisse") respectfully submits this memorandum of law in opposition to CRL Management, LLC's ("CRL") Motion to Vacate Arbitration Award (the "Motion to Vacate") [D.E. 13], and in support of Credit Suisse's Petition to Confirm Arbitration Award, [D.E. 1], and as grounds therefore states as follows:

## I. Preliminary Statement

On November 7, 2013, the arbitration panel issued an arbitration award which awarded $1,312,949.31 plus interest from November 7, 2013 to Credit Suisse (the "Award"). A true and correct copy of the Award is attached to Credit Suisse's Petition to Confirm the Arbitration Award as Exhibit A. The Award was issued after almost two years of litigation and after a five day hearing in front of a three member FINRA arbitration panel. In the Motion to Vacate, CRL provides absolutely no legal or factual basis for this Court to disturb the Award. To the contrary, CRL: (1) ignores Eleventh Circuit precedential case law; (2) withholds the controlling contract from the Court's review, while completely ignoring its terms; (3) makes assumptions not

supported by the record before the arbitration panel; and (4) fails to cite to a transcript of the hearing in support of its fallacious arguments. The Motion to Vacate is completely unwarranted and improper and CRL should be ordered to pay Credit Suisse's legal fees for requiring it to respond to such a specious filing.

From the onset of the Motion to Vacate, CRL ignores the applicable law, alleging that the Panel's award was improper because "there was no factual basis for the award and the arbitrators disregarded a clearly defined principle of law applicable to the case before them." [D.E. 13, p. 6]. An arbitration award may only be vacated where: 1) the award was procured by corruption, fraud, or undue means; 2) there was evident partiality or corruption in the arbitrators; 3) the arbitrators were guilty of misbehavior which prejudiced the rights of a party to the arbitration; or 4) the arbitrators exceeded their powers. *See* 9 U.S.C. § 10(a)(1) - (4). CRL's "argument" does not meet any of these criteria and therefore does not provide any basis for this Court to disturb the Award.

Nevertheless, even if the legal standard cited by CRL was accurate, the Award must be confirmed because, as the Panel already determined, CRL's substantive legal analysis is simply wrong. CRL contends that the Panel erred in two ways: (1) in finding that Credit Suisse did not have a duty to disclose already public information; and (2) in finding that the contract was enforceable. CRL fails to put forth any evidence to support a finding that the Panel's determinations were incorrect. Instead, CRL puts forth conclusory statements that Credit Suisse owed CRL a "duty" when it did not, and that facts were absolutely "material" when they were not. These naked conclusory statements can hardly overcome the extremely steep burden on CRL when seeking to vacate the Award.

Finally, it is clear by the paucity of the Motion to Vacate that CRL's Motion to Vacate Arbitration Award is not brought in good faith. CRL's arguments are wholly unsupported by citations to the transcript of the arbitration hearing. CRL does not even include a copy of the transcript to its Motion to Vacate Arbitration Award. This failure alone should be fatal to CRL's application.

CRL's filing of the instant motion only serves to further delay payment to Credit Suisse. This type of dilatory action should not be countenanced by this Court and Credit Suisse should be awarded its attorney's fees and costs incurred in responding to the Motion to Vacate. Based on the foregoing, Credit Suisse respectfully requests that the Motion to Vacate Arbitration Award be denied and Credit Suisse's Petition to Confirm Arbitration Award be granted.

## II. Counterstatement of Facts

On August 3, 2009, CRL opened account number 214-403982 with Credit Suisse[1]. A true and correct copy of the New Account Form and Agreement is attached hereto as Exhibit A[2]. The New Account Agreement governed the terms of the relationship between Credit Suisse and CRL. It provides, among other things:

- "THIS BROKERAGE ACCOUNT IS A NON-DISCRETIONARY BROKERAGE ACCOUNT….YOU, AS THE CLIENT … ARE RESPONSIBLE FOR ALL INVESTMENT DECISIONS" (Section XII, Bates CS 0000007) and that CRL "CAREFULLY READ AND UNDERSTAND[S] THE NEW ACCOUNT AGREEMENT" (Section XIV, Bates CS 0000007);

- CRL "will pay ON DEMAND any balance owing on the undersigned's account(s) … including interest, commissions, late charges and any collection costs, including Attorneys' fees (Section 8. PROVISIONS IN THE EVENT OF FAILURE TO PAY OR DELIVER, Bates CS 0000008);

[1] This account was opened because CRL changed its clearing firm to a firm named "Global Prime Partners". The account was a "DVP" or delivery versus payment account and securities were bought and sold through Credit Suisse, but delivered out to the clearing firm upon execution of the trade. Generally, DVP accounts are used by traders who have numerous accounts at numerous brokerage firms all over the Street.

[2] The New Account Form and Agreement was Claimant's Exhibit 1 at the Arbitration.

- CRL "should only make investments if [it] is able to (i) independently assess the risks; (ii) monitor the performance, the financial solvency of the issuers and relevant market factors; and (iii) bear the risk of loss of any investments. CSSU and your Relationship Manager have no duty to … monitor these investments on your behalf or alert you of their recommendations regarding the same or similar investments provided to other clients (Section VII. CUSTOMER TRANSACTIONS, Bates CS 0000011).

The New Account Agreement further allowed Credit Suisse, in its discretion, to sell out of a position if CRL failed to pay for a transaction by settlement date. (Sections 8(c) and 8(d). PROVISIONS IN THE EVENT OF FAILURE TO PAY OR DELIVER, Bates CS 0000008-9).

The majority of the underlying facts are not in dispute. On July 12, 2011, Respondent, a qualified institutional buyer ("QIB")[3], placed an unsolicited reverse inquiry with Credit Suisse regarding the purchase of three (3) million shares of Invesco Mortgage Capital ("IVR"). A reverse inquiry is where an institutional investor initiates contact to a dealer indicating its interest in a security offering that is not yet to market.

On August 17, 2011, a secondary offering for 20,000,000 shares of IVR was announced (the "IVR Offering"). Shortly thereafter, one of the Relationship Managers for CRL's account, Jeryl Paris, contacted CRL advising it of the IVR Offering. CRL confirmed its indication of interest for 3 million shares of IVR. Credit Suisse was able to fill two million (2,000,000) of the three million (3,000,000) shares that CRL requested at a price of $18.37 per share, for a total cost of $36,740,000 (the "Shares"). CRL confirmed the purchase on August 18, 2011. The trade was executed as confirmed by CRL.

Since CRL's entire indication of 3 million shares was not filled in the secondary offering, Ms. Paris had a subsequent discussion with CRL on the morning of August 18, 2011 inquiring

[3] A Qualified Institutional Buyer (QIB) is a corporate entity that falls within the "accredited investor" category, defined in SEC Rule 501 of Regulation D. A QIB is one that owns and invests, on a discretionary basis, at least $100 million in securities; for a broker-dealer the threshold is $10 million.

whether CRL had an interest in buying additional shares of IVR in the secondary market. CRL responded that it did not wish to purchase additional shares of IVR at that time.

On August 23, 2011, despite soliciting, authorizing and confirming the transaction, CRL informed Credit Suisse that it would not honor the trade and would not pay for the Shares. In doing so it breached its contract with Credit Suisse. On August 24, 2011, Credit Suisse advised CRL that CRL owned the Shares and demanded that CRL make good on its trade. In accordance with the New Account Agreement, Credit Suisse also advised CRL that CRL would be responsible for any losses associated with the transaction. Despite Credit Suisse's demand, CRL refused to pay for its trade. As a result, Credit Suisse was forced to sell the Shares. In doing so, Credit Suisse incurred a loss of no less than $1,792,949.31.

According to its Motion to Vacate the Arbitration Award, CRL made the decision that it would not honor the transaction based on the contention that Credit Suisse had a duty and failed to disclose that the **publicly available** book value for the IVR stock had dropped. This position is factually incorrect. At the time that CRL confirmed its trade with Credit Suisse, the book value for IVR was already disclosed to it by the public filing made by IVR with the SEC. As such, any investor – and undoubtedly a QIB such as CRL – had the ability and obligation to review such public information. Indeed, 17 CFR 230.172 provides that if information is publicly available, such as a company filing with the SEC, it is considered "delivered" to the investor. This rule is known as "Access equals delivery."

## III. The Correct Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs the review of arbitration awards where federal subject matter exists, *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983), and the subject of the arbitration "evidences a

transaction involving interstate commerce." 9 U.S.C. § 2; *Lifecare Int'l, Inc. v. CD Medical, Inc.*, 68 F.3d 429, 433 (11th Cir. 1995). In addition, as stated by this Court:

> The FAA "imposes a heavy presumption in favor of confirming arbitration awards," and so "a court's confirmation of an arbitration award is usually routine or summary." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1288 (11th Cir. 2002). The FAA provides, however, that a district court may vacate an arbitration award in limited circumstances, specifically, where: 1) the award was procured by corruption, fraud, or undue means; 2) there was evident partiality or corruption in the arbitrators, or either of them; 3) the arbitrators were guilty of misbehavior which prejudiced the rights of a party to the arbitration; or 4) the arbitrators exceeded their powers. *See* 9 U.S.C. § 10(a)(1) - (4). **These four statutory grounds are the only bases upon which a court may vacate an arbitration award.** *See Hall Street Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).

*Cat Charter L.L.C. v. Schurtenberger*, Case No. 08-10104-CIV-MOORE/SIMONTON, 691 F. Supp. 2d 1339, 1342 (S.D. Fla. 2010) (emphasis added). Any basis for vacatur that is outside of the four aforementioned statutory grounds is not permitted. In fact, so restricted is a court's review of arbitration awards that this Court's sister court recently stated:

> [I]t is also "well settled that judicial review of an arbitration award is narrowly limited." *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1190 (11th Cir. 1995); *see also Robbins v. Day*, 954 F.2d 679, 683 (11th Cir. 1992), *overruled on other grounds*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995) ("The [FAA] does not allow courts to 'roam unbridled' in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specific ways."); *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) ("[A]rbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party.") (citation and internal quotation marks omitted). Indeed, "judicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) (citation and internal quotation marks omitted).

*Pochat v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Case No. 12-22397-CIV-ROSENBAUM, 2013 U.S. Dist. LEXIS 119447, *16-17 (S.D. Fla. Aug. 22, 2013).

Finally, the party seeking vacatur bears the burden of establishing grounds sufficient to vacate the arbitration award. *O.R. Sec. Inc. v. Prof. Planning Assoc.*, 857 F.2d 742, 746 (11th Cir. 1988). Should a court refuse to vacate the arbitration award, then "Section 9 of the FAA provides that, upon application of any party to the arbitration, the court *must* confirm the arbitrator's award . . . ." *Frazier v. Citifinancial Corp.*, 604 F.3d 1313, 1321 (11th Cir. 2010) (emphasis in original).

## IV. Argument

### A. "Manifest Disregard Of The Law" Is Not A Basis Upon Which To Vacate The Award

CRL initially argues that the arbitration award should be vacated because the arbitrators exhibited a "manifest disregard of the law" in rendering the Award. It is ironic that CRL itself disregards the law when pursuing its argument. It is undisputed that "manifest disregard of the law does not provide a basis for vacatur of an arbitration award in the Eleventh Circuit." *Pochat*, 2013 U.S. Dist. LEXIS at *23. In *Hall St.*, the Supreme Court explained that "Sections 10 and 11 of the FAA, 9 U.S.C. §§ 10, 11, provide the exclusive means by which a federal court may upset an arbitration panel's award." 552 U.S. at 586. Following the Supreme Court's decision in *Hall St.*, "the Eleventh Circuit concluded that 'judicially-created bases for vacatur' that it had previously recognized, including manifest disregard of the law, were no longer viable." *Pochat*, 2013 U.S. Dist. LEXIS at *25 (citing *S. Comm'ns Servs. v. Thomas*, 730 F.3d 1352 (11th Cir. 2013) (quoting *Frazier*, 604 F.3d at 1324) (internal quotation marks omitted); *Aviles v. Charles Schwab & Co.*, 435 F. App'x 824, 829 (11th Cir. 2011) ("Even manifest disregard of the law is no longer a valid independent, non-statutory ground upon which an arbitration award may be set aside.") (citing *Frazier*, 604 F.3d at 1321-23)). *See also Cat Charter*, 646 F.3d at 842 n.10 ("The

Supreme Court has made clear that the statutory grounds justifying vacatur found in 9 U.S.C. § 10(a) are exclusive.”).[4]

Thus, the Eleventh Circuit has made clear that "manifest disregard of the law" is not a basis to vacate an arbitration award. Consequently, the Award cannot be vacated on this ground[5].

**B. CRL Cannot Re-Litigate The Arbitration In This Court By Claiming The Award Had No Factual Or Reasonable Basis**

Without a legal basis under the FAA upon which to vacate the Award, CRL impermissibly asks this Court to sit in place of the arbitration panel and re-evaluate the factual basis of the arbitrators' decision. Yet, as Chief Judge Federico A. Moreno stated only a few months ago, "[the] Court is not called to be an appellate court on arbitration decisions. An arbitration award is presumptively entitled to deference and enforcement." *Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, Case No. 12-60654-CIV-MORENO, 2013 U.S. Dist. LEXIS 171811, *10 (S.D. Fla. Dec. 4, 2013) (citing *Rosensweig v. Morgan Stanley & Co., Inc.*, 494 F.3d 1328, 1333 (11th Cir. 2007)). This inescapable conclusion is because "[w]hen two parties voluntarily subject themselves to arbitration, one party should not be allowed to re-litigate the issues presented merely because the decision rendered was unfavorable." *Id.* at *13. This principle is true "even if the reviewing court finds factual or legal error or disagrees with the

[4] While some Circuits have treated "manifest disregard of the law" as a judicial interpretation of Section 10(a)(4) of the FAA, the Eleventh Circuit has refused to follow such an interpretation. *See Pochat*, 2013 U.S. Dist. LEXIS at *26-27 ("*Frazier*, 604 F.3d at 1323-24 (finding that, although other circuits 'treat[] manifest disregard of the law not as an additional, independent non-statutory ground for vacatur, but instead as a judicial interpretation of the district court's power under § 10(a)(4),' the Eleventh Circuit 'agree[s] with the Fifth Circuit that the categorical language of *Hall Street* compels' the conclusion that 'judicially-created bases for vacatur are no longer valid'); *Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1306 (M.D. Fla. 2010) ('In response [to the holding in *Hall Street*], some circuits have meshed the "manifest disregard" ground for vacation into the § 10(a)(4) "exceeded their scope" provision. . . . The Eleventh Circuit, however, has rejected this approach and regards the statutory bases as exclusive.') (citing *Frazier*, 604 F.3d 1313)").

[5] Even if "manifest disregard of the law" was a basis to vacate an arbitration award, the Panel did not disregard the law whatsoever. *See* Section C, *infra*.

arbitrator's interpretation[.]" *Id.* at *11-12 (citing several U.S. Supreme Court decisions for the proposition, in the context of arbitrations concerning labor disputes, that a court may **not** interfere with an arbitration award even if the "arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish").

CRL impermissibly asks this Court to review the arbitrators' factual findings, re-examine them, and overturn them. Credit Suisse respectfully requests this Honorable Court decline to do so as the FAA "presumes that reviewing courts will confirm arbitration awards and that judicial review of the arbitration process and the amount of the award will be severely limited." *Aviles v. Charles Schwab & Co.*, 2010 U.S. Dist. LEXIS 35025, *19 (S.D. Fla. Apr. 9, 2010) (citing *Booth v. Hume Pub., Inc.*, 902 F.2d 925, 932 (11th Cir. 1990)); *see also Frazier*, 604 F.3d at 1321 ("There is a presumption under the FAA that arbitration awards will be confirmed, and 'federal courts should defer to an arbitrator's decision whenever possible.'" (quoting *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 909 (11th Cir. 2006)); *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 2007 U.S. App. LEXIS 27407, *11-12 (11th Cir. Nov. 28, 2007) ("Because arbitration is an alternative to litigation, judicial review of arbitration decisions is 'among the narrowest known to the law.'") (internal citations omitted); *Areca Inc. and Enrinel Investments Corp. v. Oppenheimer & Co., Inc.*, et al, 960 F.Supp. 52, 57 (S.D.N.Y. 1997) (noting that the arbitration panel, as trier of fact, is entitled to make factual findings and credibility determinations, and the court is not empowered to review them); *Campbell v. Cantor Fitzgerald & Co.*, Inc., 21 F.Supp.2d 341, 344 (S.D.N.Y. 1998) (holding that the credibility of the evidence presented is a job for the arbitrators); *see also Hruban v. Steinman*, 40 Fed. Appx. 723, 724 (3d Cir. 2002) (finding that "it is not the proper role

of the court to 'sit as the [arbitration] panel did and reexamine the evidence under the guise of determining whether the arbitrators exceeded their powers").

**C. There Was A Factual And Reasonable Basis For The Award**

CRL claims that the Award should be vacated "because there was no factual basis for the award and the arbitrators disregarded a clearly defined principle of law applicable to the case before them." [D.E. 13, p. 6]. As discussed, CRL's contentions are not a basis on which to vacate an arbitration award. Further, CRL's contentions were already raised *and rejected* during the arbitration hearing, in which the Panel found CRL's contentions meritless and unsupported by both the law and the facts[6]. Despite these fatal flaws in CRL's Motion to Vacate Arbitration Award, Credit Suisse briefly responds below to the legal and factual arguments raised by CRL.

**i. Credit Suisse Did Not Owe a Duty To Independently Disclose Public Information To CRL**

CRL first claims that the award was improper because the Panel "disregarded a clearly defined principle of law" in finding that Credit Suisse had no duty to disclose *already public* information to CRL. CRL contends that Credit Suisse "was required to provide such information to CRL which would necessarily affect the value of the Invesco shares."[7] [D.E. 13, p. 8].

[6] As previously discussed, CRL is simply attempting to re-litigate claims already properly decided, a request that cannot stand as the basis for a motion to vacate. A court reviewing an arbitration award is not empowered to sit in as the Panel had and "reexamine the evidence under the guise of determining whether the arbitrators exceeded their powers." *Hruban* at 724. Further, CRL fails to put forth any facts that support their contention that the Panel exceeded their powers. Finally, CRL does not even attempt to cite to the transcript – or even include it as an exhibit – in support of its spurious Motion to Vacate Arbitration Award.

[7] CRL cites to numerous cases as purported "support" for their contention that Credit Suisse had a duty to disclose the public information pertaining to the Invesco shares. However, the cases cited by CRL are inapposite to the facts at hand. The case law cited by CRL simply stands for the proposition that *once a duty to disclose information is established*, the non-disclosure of that information is improper. For example, *SEC v. Goldman & Sachs & Co.*, 790 F. Supp. 2d 147 (S.D.N.Y. 2011), which CRL claims stands for the general proposition that a party has an obligation to disclose all material information that affects the value of the securities and the risk associated with the transactions, in fact only stands for the proposition that "once a party chooses to speak, it has a 'duty to be both accurate and complete.'" *Id.* at 162 (internal citations omitted). Here, it is irrefutable that *no duty existed* because there was no discussion of book value between Credit Suisse and CRL when the trade was entered. In addition, the information was already made public and was available to CRL. Accordingly, CRL has failed to cite to any law *creating a duty* in this situation.

CRL's argument completely ignores the fact that the contract at issue did not impose any such duty regarding CRL's investment decisions. To the contrary, CRL was "RESPONSIBLE FOR ALL INVESTMENT DECISIONS" (Exhibit A Section XII, Bates CS 0000007). Further the contract provides that CRL "should only make investments if [it] is able to (i) independently assess the risks; (ii) monitor the performance, the financial solvency of the issuers and relevant market factors; and (iii) bear the risk of loss of any investments. CSSU and your Relationship Manager have no duty to … monitor these investments on your behalf or alert you of their recommendations regarding the same or similar investments provided to other clients" (Exhibit A, Section VII. CUSTOMER TRANSACTIONS, Bates CS 0000011).

Likewise, there is no duty imposed by law to provide publicly available information. In fact, CRL's argument is contrary to black letter law. For an omission to be actionable, the securities laws must impose a duty to disclose the omitted information." *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. N.Y. 2002) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993)). When information is publicly available, there is no need to disclose it. *Id.* "Disclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *Id.* Moreover, even if CRL can identify a duty to disclose, *arguendo*, "[th]e law is clear that a party can be relieved of a duty to disclose when certain developments affecting a corporation become matters of general public knowledge." *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 437 (S.D.N.Y. 2009) (citations and quotations omitted). "Stock prices, public filings, and analyst reports . . . are all publicly available information." *In re RCN Litig.*, 2006 U.S. Dist. LEXIS 12929 (D.N.J. Mar. 21, 2006). In addition, publicly available information is considered "delivered" to the investor once it is filed with the SEC. *See* 17 CFR 230.172.

The drop in book value at issue, was publicly and readily available on August 17, 2011 at approximately 4:15 pm, according to the SEC's EDGAR website, *before* CRL entered the transaction at issue. In addition, prior to CRL's purchase there was readily available public information notifying potential investors that IVR's book value was trending down. This information was publicly filed with the SEC and/or available on IVR's website. Attached as Exhibits B and C are copies of an 8-K filed by IVR and a press release issued by IVR which document book value declines in the months leading up to the trade at issue[8]. Further, at least one research analyst that covered IVR anticipated the book value decline occurring and published research forecasting the book value decline. Attached as Exhibit D is a research report issued by Credit Suisse estimating a 6.2% decline in IVR book value days before the trade at issue[9]. Finally, CRL was investing in IVR prior to its August 2011 purchase and was aware of IVR's fluctuating book value. Attached as Exhibit E is a spreadsheet showing CRL's IVR purchases and IVR's book value[10].

Accordingly, as Credit Suisse has no duty to independently disclose publicly available information, and the alleged "omitted" information was publicly available, CRL's argument cannot support vacatur of the arbitration award.

**ii. <u>CRL is Obligated To Review Offering Documents Available To It</u>**

CRL's next argument in support of vacating the arbitration award is that Credit Suisse omitted material information affecting the value of its shares in the Inveso offering, thus making the contract "invalid." CRL claims that "Credit Suisse's argument to the Panel that it had no duty to specifically disclose this information to CRL because it was disclosed in an SEC filing just before the sale was confirmed is without merit and in doing so, CRL respectfully submits,

[8] These were Claimant's Exhibits 28 and 29 at the arbitration, respectively.
[9] This was Respondent's Exhibit 8(c) at the arbitration.
[10] This was Claimant's Exhibit 21 at the arbitration.

Credit Suisse encouraged the Panel to disregard the law." [D.E. 13, p. 10]. CRL again reiterates the same argument rejected by the Panel during the arbitration and points to no specific findings or evidence as to how the Panel exceeded their powers. CRL's conclusory statement that Credit Suisse "encouraged the Panel to disregard the law" is completely false and wholly unsupported by any citation to the transcript of the arbitration hearing. In fact, it is CRL who has attempted to have the Panel – and now this Court – disregard black letter law.

As a threshold matter, CRL makes an unsupported conclusion that book value was in fact material to CRL's investment decision. There was significant testimony at the hearing questioning the materiality of the book value regarding the trade at issue. Indeed, Credit Suisse introduced evidence showing CRL had previously purchased IVR at prices *higher* than the published book value. *See* Exhibit E. As such, there was evidence questioning whether IVR's book value was even material to the trade – or whether it was merely an excuse concocted by CRL after the trade was entered to try to avoid paying for it.

Regardless of whether or not IVR's book value was in fact "material" to CRL's investment decision, relevant case law clearly states that an investor has a duty to review offering documents available to it. *See Iconix Brand Group Incorporated v. Merrill Lynch, Pierce Fenner & Smith Incorporated*, 2012 U.S. App. Lexis 25169 (2d Cir., December 10, 2012). Moreover, to the extent that an investor claims offering documents were not provided to it prior to a purchase, the investor has an obligation to request relevant documents. *Id.* (holding that to protect itself, the investor "simply had to request this important document" before acquiescing in a $13 million purchase of securities that were only available to QIBs); *see Emergent Capital Inv. Magmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) (discussing authority

holding justifiable reliance defeated where "buyer should have, and easily could have, protected itself from misrepresentation by demanding that it see [a] report prior to a closing").

In this case, not only were offering documents available to CRL, but CRL also had the ability to easily review all relevant information in connection with the IVR secondary public offering via its Bloomberg terminal. In fact, CRL produced printouts from its Bloomberg terminal confirming that this information was in fact available to CRL at the time of purchase. Attached as Exhibit F are copies of Bloomberg terminal printouts produced by CRL showing news on IVR and an IVR price chart[11]. At best, CRL chose not to review the publicly available information. At worst, CRL reviewed the publicly available information, chose to enter the trade, and then manufactured an "excuse" once it was apparent that it would lose money on the trade.

CRL is an institutional, professional investor. It uses a DVP account so Credit Suisse – and the other brokerage firms it does business with – cannot see its trading activity or holdings. Nevertheless, CRL contends that it – unlike every other investor in the market – had no obligation to review the publicly available information regarding its unsolicited $36 million dollar order. This assertion is preposterous and flatly contradicted by black letter law.

### D. CRL Filed the Instant Motion Simply to Delay the Enforcement of the Judgment and Thus Filed for a Dilatory Purpose

Based upon the paucity of CRL's Motion to Vacate Arbitration Award, it is clear that CRL filed the instant motion simply to further delay and hinder Credit Suisse's collection of the arbitration award. As such, Credit Suisse is contractually entitled to the payment of its "collection costs, including Attorneys' fees" incurred as a result of CRL's dilatory efforts. *See* Exhibit A, Section 8. PROVISIONS IN THE EVENT OF FAILURE TO PAY OR DELIVER,

[11] Copies of these documents were introduced as Claimant's Exhibits 27, 30 and 31.

Bates CS 0000008. Accordingly, Credit Suisse respectfully requests that this Court award it its attorneys' fees incurred in connection with the Motion to Confirm the Award.

Moreover, Federal courts have awarded attorney's fees to a party who incurred expenses responding to a motion to vacate an arbitration award, upon a finding that the motion was brought without any legal basis, and constituted "a largely dilatory effort." *Manning v. Smith Barney, Harris Upham & Co.*, 822 F. Supp. 1081, 1083-84 (S.D.N.Y. 1993); *see also B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913-14 (11th Cir. 2006) (suggesting that "[w]hen a party who loses an arbitration award assumes a never-say-die attitude and drags the dispute through the court system without an objectively reasonable belief it will prevail, the promise of arbitration is broken" and that in such a case sanctions may be appropriate). "To impose sanctions, a court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, No. 04 Civ. 2504 (LAP) (JCF), 2004 WL 2823038, at *9 (S.D.N.Y. Dec. 1, 2004) (internal citations omitted).

CRL puts forth entirely meritless claims as support for its Motion to Vacate Arbitration Award. CRL simply repackages the same arguments that the Panel rejected and fails to put forth even the slightest indicia of evidence that the Panel disregarded law or acted without a legal or factual basis. In fact, CRL fails to even include the transcripts of the arbitration proceedings to allow the court to properly review the findings of the Panel. Where a party seeking to vacate an arbitration award does not cite any particular principle of law that the arbitrators are supposed to have ignored, sanctions are warranted. *See Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 708 (2d Cir. 1985) (affirming district court's imposition of sanctions where attorney raised "arguments which were not only inappropriate upon a motion to confirm but were also without

merit”). *See Matter of U.S. Offshore, Inc. (Seabulk Offshore, Ltd.),* 753 F. Supp. 86, 92 (S.D.N.Y. 1990) (granting attorneys' fees under Rule 11 where party's arguments "appear[ed] to have been motivated by a desire to forestall complying with the award ... and ... in the main [were] not warranted by existing law or a good faith argument to extend, modify or reverse existing law"). Here, CRL fails to state with any particularity how it is that the Panel disregarded the law or acted without a factual basis. To the contrary, CRL simply puts forth unsupported conclusions of fact and misstatements of law that cannot form the basis of vacatur of an arbitration award. One can only surmise from this activity and the objective lack of merit of CRL’s claim that CRL is simply looking to forestall the payment of the arbitration award and the end of this litigation.

Finally, as an example of CRL’s lack of good faith and their questionable credibility, it came to Credit Suisse’s attention after the hearing that CRL made certain misrepresentations during the arbitration hearing. CRL claimed that it was only CRL’s President Charles R. Langston III’s money that comprised the entirety of the Invesco investment. However, in subsequent proceedings initiated in District Court in the Southern District of Florida, it has come to light that CRL indeed had multiple investors. *See SEC v. Charles Raymond Langston III, et. al.*, Civil Action No. 1:13-cv-24360, *Tandi Partners Lmtd. v. CRL Management, LLC et. al.*, Civil Action No. 1:13-cv-23900, attached hereto as Exhibits G and H are the Complaints in those matters. This type of behavior brings into question CRL’s credibility and also demonstrates why CRL needs to be sanctioned for its baseless Motion to Vacate.

## V. Conclusion

Based on the foregoing, Credit Suisse respectfully requests that the Motion to Vacate Arbitration Award be denied, Credit Suisse’s Petition to Confirm Arbitration Award be granted,

Credit Suisse be awarded its attorneys' fees and costs associated with this matter, and for all other relief this Court deems just and proper.

Dated: February 24, 2014

Respectfully Submitted,

BRESSLER, AMERY & ROSS, P.C.
Counsel for Petitioner Credit Suisse Securities (USA) LLC
200 E. Las Olas Blvd., Suite 1500
Fort Lauderdale, FL 33301
Telephone: (954) 499-7979
Facsimile: (954) 499-7969
E-mail: jschwartz@bressler.com

By: ***s/ Jonathan C. Schwartz***
Florida Bar No. 51540

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 24, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

***s/ Jonathan C. Schwartz***

**SERVICE LIST**

Daniel S. Newman, Esq.
dnewman@broadandcassel.com
Broad and Cassel
One Biscayne Tower, 21st Floor
Two South Biscayne Boulevard
Miami, FL 33131
Telephone No.: (305) 373-9467
Facsimile No.: (305) 995-6437
Attorneys for Respondent CRL Management, LLC