THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-24571-KMM

CREDIT SUISSE SECURITIES (USA), LLC,

    Petitioner,

vs.

CRL MANAGEMENT, LLC,

    Respondent.
_____/

## ORDER CONFIRMING ARBITRATION AWARD

THIS CAUSE came before the Court upon Petitioner Credit Suisse Securities (USA), LLC's Petition to Confirm Arbitration Award (DE 1), and Respondent CRL Management, LLC's Motion to Vacate Arbitration Award (DE 13).  Respondent filed a Response in Opposition to Petitioner's Petition (DE 14).  Petitioner filed a Response in Opposition to Respondent's Motion to Vacate and Reply in Support of its Petition (DE 22) and Respondent filed a Reply (DE 29).  This matter is therefore ripe for review.  Upon consideration of the Petition, the Motion to Vacate, the Responses, the Replies, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following order confirming the Petition and denying Respondent's Motion to Vacate Arbitration Award.

### I.    BACKGROUND

  A.  <u>The Underlying Dispute</u>

On August 3, 2009, Respondent opened account number 214-403982 with Petitioner. See Pet'r Resp., 2, Ex. A (DE 22).  The New Account Agreement (the "Agreement") governed the terms of the relationship between Petitioner and Respondent.  Pet'r Resp., at 2.  The

Agreement included an agreement to arbitrate controversies and a choice of law provision, which will be discussed infra.

On or about July 11, 2011, Respondent placed an unsolicited, non-binding, reverse inquiry[1] with Petitioner regarding the purchase of three million shares of Invesco Mortgage Capital ("IVR"). Mot., at 2 (DE 13); Pet'r Resp., at 3 (stating that the date of this inquiry was July 12, 2011).

At approximately 4:14 p.m., on August 17, 2011, IVR filed a preliminary prospectus (the "Prospectus"), disclosing the decline in book value of its common stock. Mot., at 2; Pet'r Resp., at 11; (DE 18, Ex. 12). The Prospectus provided in pertinent part:

> Our book value per share of common stock at July 31, 2011 was $18.39, compared to $19.34 at June 30, 2011, in each case on a fully diluted basis. The July 31, 2011 book value includes our retained earnings for the month of July 2011. This decline in our book value was primarily due to the change in valuation of our interest rate hedges. Since July 31, 2011, swap rates have experienced further declines and the markets in which we participate have experienced increased volatility, which could negatively impact our book value.

Mot., at 3. IVR also filed a Form 8-K regarding the declining book value of its shares. Id.; (DE 25, at Ex. B).

Also on August 17, 2011, a secondary offering for 20,000,000 shares of IVR was announced (the "IVR Offering"). Pet'r Resp., at 3. Shortly thereafter, at approximately 4:20 p.m., one of the Relationship Managers for Respondent's account, Jeryl Paris ("Paris"), contacted Respondent's managing member, Ray Langston ("Langston"), and advised him of the IVR Offering. Id.; Reply, at 1-2 (DE 30). Respondent confirmed its indication of interest for three million shares of IVR. Id. Petitioner was able to fill two million of the three million shares that Respondent requested at a price of $18.37 per share, for a total cost of $36,740,000 (the

---

[1] A reverse inquiry is where an institutional investor initiates contact to a dealer indicating its interest in a security offering that is not yet to market. Id.

"Shares"). Id. Respondent confirmed the purchase. Id. When Paris called Langston he did not tell Langston about the decline in IVR's book value. Id. The trade was made on August 17, 2011 and processed on August 18, 2011. (DE 18, at Ex. 4).

On August 18, 2011, Paris had a discussion with Respondent inquiring as to whether Respondent had any interest in buying additional shares of IVR on the secondary market. Pet'r Resp. at 3-4. Respondent told Paris that it did not wish to purchase additional shares of IVR at that time. Id. at 4. Paris did not tell Respondent about the declining book value of IVR shares. Mot., at 3. Later that day Respondent learned of the decline in book value of IVR shares from another source. Mot., at 4.

On August, 23, 2011, Respondent informed Petitioner that it would not honor the trade and would not pay for the Shares. Pet'r Resp., at 4. On August 24, 2011, Petitioner advised Respondent that Respondent owned the Shares and demanded that Respondent make good on its trade. Id. Petitioner also informed Respondent that, pursuant to their Agreement, Respondent would be responsible for any losses associated with the transaction. Id. Respondent refused to pay. Id. Petitioner was forced to sell the shares and in doing so incurred a loss of $1,792,949.31. Id.

B. The Arbitration

Petitioner brought the underlying action against Respondent for breach of contract before the Financial Industry Regulatory Authority ("FINRA"), pursuant to the Agreement. Pet., at ¶ 1. The case summary provided in the arbitration award (the "Award") is as follows: "[Credit Suisse] asserted the cause of action of breach of contract. The cause of action relates to [CRL Management's] alleged refusal to pay for the purchase of shares of Invesco Mortgage Capital." Id. at Ex. A. Petitioner claimed that Respondent was liable in the amount of $1,792,949.31. Id. Following a five day hearing in front of a three member FINRA arbitration panel (the "Panel"),

3

on November 7, 2013, the Panel issued an Award which awarded Petitioner $1,312,949.31, plus interest from the date of the decision.  Id. at ¶ 1; id. at Ex. A; Pet'r Resp., at 1.  The Award further states that each party should bear their own expenses and costs and denied Petitioner's request for attorneys' fees.  Pet., at Ex. A.

On December 19, 2013, Petitioner filed the instant Petition to Confirm Arbitration Award.  Petitioner asserted diversity jurisdiction under 28 U.S.C. § 1332. Pet., at ¶ 5.  Petitioner is a Delaware limited liability company with its principal place of business in New York, New York and Respondent is a Florida limited liability company with its principal place of business in Miami, Florida.  Id. at ¶¶ 3-4.  Thus, this dispute is between citizens of different states and the amount in controversy exceeds the sum of $75,000.  Id. at ¶ 5.  Petitioner asserted that venue is proper under 9 U.S.C. § 9 because the Award was made within this judicial district in Miami, Florida.  Id. at ¶ 6.  On February 5, 2014, Respondent filed the instant Motion to Vacate Arbitration Award.

## II.   DISCUSSION

The issue before the Court is whether to affirm or vacate the Panel's Award.  Respondent argues that the Award should be vacated because there is no rational or factual basis for the Award and the Panel exhibited a "manifest disregard of the law" in rendering the Award.  In order for the Court to reach this issue, however, it must first decide whether Eleventh Circuit law or "New York law"[2] applies to the instant proceeding.  Under Eleventh Circuit law, the grounds upon which Respondent seeks vacatur of the Award are not recognized.  However, under New York law, the grounds upon which Respondent seeks vacatur of the Award are recognized.

---

[2] Petitioner uses New York law and Second Circuit law interchangeably.

A. Choice of Law

In the Eleventh Circuit, Sections 10 and 11 of the Federal Arbitration Act set forth the exclusive grounds for vacating, correcting, or modifying an arbitration award. Pochat v. Merrill Lynch, Pierce, Fenner & Smith, Inc., No. 12-cv-22397, 2013 WL 4496548, at *6 (S.D. Fla. Aug. 22, 2013); see also White Springs Agric. Chems., Inc. v. Glawson Invs. Corp., 660 F.3d 1277, 1280 (11th Cir. 2011) (citing Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 586 (2008)) ("Sections 10 and 11 of the FAA, 9 U.S.C. §§ 10, 11, provide the exclusive means by which a federal court may upset an arbitration panel's award."); see also Cat Charter, LLC v. Shurtenberger, 646 F.3d 836, 842 n. 10 (11th Cir. 2011) ("The Supreme Court has made clear that the statutory grounds justifying vacatur found in 9 U.S.C. § 10(a) are exclusive."). Those grounds are where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption by the arbitrators; (3) the arbitrators were guilty of misbehavior which prejudiced the rights of a party to the arbitration; or (4) the arbitrators exceeded their powers. See 9 U.S.C. §§ 10(a)(1)-(4). Previously recognized, judicially created bases for vacatur, aside from the four categories set forth in the FAA, are no longer recognized in this Circuit. See Pochat, 2013 WL 4496548 at *8-9; Aviles v. Charles Schwab & Co., 435 F. App'x 824, 829 (11th Cir. 2011) (citing Frazier v. CitiFinancial Corp., LLC, 605 F.3d 1313, 1321-23 (11th Cir. 2010)) ("Even manifest disregard of the law is no longer a valid independent, non-statutory ground upon which an arbitration award may be set aside."). Because the grounds upon which Respondent seeks vacatur, i.e., no rational or factual basis for the Award and manifest disregard of the law, are no longer recognized in the Eleventh Circuit, if the Court applies Eleventh Circuit law to the instant case, Respondent's Motion to Vacate can easily be denied and the Award can easily be confirmed.

5

Respondent on the other hand, argues for the first time in its Reply, that New York law should govern the enforcement of the Award.  Reply, at 1.  The basis for Respondent's assertion is that there is a choice of law provision in the Agreement.  The Agreement states as follows:

12. ARBITRATION DISCLOSURES

THIS AGREEMENT CONTAINS A PREDISPUTE ARIBTRATION CLAUSE.  BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOWS:

*       *       *

- The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

13. AGREEMENT TO ARBITRATE CONTROVERSIES

IT IS AGREED THAT ANY CONTROVERSY BETWEEN US ARISING OUT OF YOUR BUSINESS OR THIS AGREEMENT SHALL BE SUBMITTED TO ARIBTRATION CONDUCTED BEFORE ANY NATIONAL SECURITIES EXCHANGES ON WHICH A TRANSACTION GIVING RISE TO SUCH CLAIM TOOK PLACE (AND ONLY BEFORE SUCH EXCHANGE) OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. AND IN ACCORDANCE WITH ITS RULES.  ARBIRTRATION MUST BE COMMENCED BY SERVICE UPON THE OTHER PARTY OF A WRITTEN DEMAND FOR ARBITRATION OR A WRITTEN NOTICE OF INTENTION TO ARBITRATE.  NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PREDISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INTIATED IN COURT A PUTATIVE CLASS ACTION; OR WHO IS A MEMBER OF A PUTATITIVE CLASS ACTION WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION . . . SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT TO THE EXTENT STATED HEREIN.

*       *       *

15. CONFLICTING ACCOUNT INSTRUCTIONS/DISPUTES

*       *       *

APPLICABLE LAW

6

> This Agreement is made under, and will be governed by and construed in accordance with, the laws of the State of New York.

(DE 25, Ex. A).

Respondent argues that the choice of law provision contained in the Agreement that specifies that the Agreement will be "governed by and construed in accordance with" New York law, dictates that New York law applies to the enforcement of Petitioner's Award. While it is clear that the Agreement and the resulting arbitration were to be governed by New York law, the provision is arguably ambiguous regarding what law applies to the instant proceeding to enforce the Panel's Award. Compare with Hackett v. Milbank, Tweed, Hadley & McCloy, 654 N.E.2d 95 (N.Y. 1995) (An agreement expressly provided that New York law would govern the arbitration and that the only grounds for vacating any award were those set forth in two New York statutes. The court found that such "explicit and unambiguous choice of law in an arbitration agreement must be given effect."); Diamond Waterproofing Sys., Inc. v. 55 Liberty Owners Corp., 826 N.E.2d 802, 806 (N.Y. 2005) (finding that in the absence of critical language regarding enforcement the parties' choice of law provision did not modify the default rules set by the FAA).

Since the choice of law provision is arguably ambiguous as to what body of law governs the instant proceeding, the Court will apply the common law contract principle that a court should construe ambiguous language against the interest of the party that drafted it—in this case, Petitioner. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995). Accordingly, and in an abundance of caution, the Court has undertaken an analysis applying New York law to the instant proceeding. However, as will be discussed infra, applying New York law does not yield a favorable result for Respondent. Simply put, Respondent has failed to demonstrate that the Panel's Award was in disregard of the law—let alone, manifestly so.

7

B. Manifest Disregard[3]

In the Second Circuit, manifest disregard of the law is a ground upon which a court may rely to vacate or modify an arbitration award. See Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202 (2d Cir. 1998) (stating that the Second Circuit has recognized that an arbitration award may be vacated if it is in "manifest disregard of the law"); Abu Dhabi Inv. Authority v. Citigroup, Inc., 557 Fed. App'x 66, 67 (2d Cir. 2014) (summary order) (stating that an arbitration award may be vacated if it results from the arbitrators' manifest disregard of the law); T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339-40 (2d Cir. 2010) (analyzing whether an arbitration award was in manifest disregard of the law while declining to decide whether manifest disregard of the law remains a valid ground for vacating arbitration awards after Hall Street).[4]  However, awards are vacated for manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent. T.Co, 592 F.3d at 339.  The reach of this doctrine is "severely limited," Halligan, 148 F.3d at 202, and a

---

[3] As previously mentioned, supra at page 4, in addition to manifest disregard of the law, Respondent argues that the Award lacks a rational basis. In order for the Court to find that the Panel did not exhibit manifest disregard for the law when it rendered its decision, the Court must determine whether there is a rational basis for the Award. If there is a rational basis for the Award—the Award must be upheld. See In re Arbiration Before New York Stock Exchange, No. 04-civ-488(RWS), 2004 WL 2072460, at *6 (S.D.N.Y. Sept. 8, 2004) ("Where there is a 'colorable justification' or a 'rational basis' for an award, it is not in 'manifest disregard of the law.'") (citing Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd., 683 F. Supp. 945, 951 (S.D.N.Y. 1988), aff'd, 888 F.2d 260 (2d Cir. 1989)).  Thus, Respondent's argument that the Award should be vacated because it lacks a rational basis will be addressed in tandem with the Court's determination as to whether the Panel disregarded the law when it rendered its Award in favor of Petitioner.

[4] In Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 548 F.3d 85, 94 (2d Cir. 2008), overturned on other grounds, 559 U.S. 662 (2010), the Second Circuit found that "manifest disregard" survived the Supreme Court's decision in Hall Street as a "judicial gloss" on the enumerated grounds for vacatur of arbitration awards under 9 U.S.C. § 10.  On appeal the Supreme Court declined to decide whether "manifest disregard" survived its decision in Hall Street as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth in 9 U.S.C. § 10.  Stolt-Nielsen S.A., 559 U.S. at 672 n. 3.  Since the Second Circuit has subsequently analyzed arbitration awards under the manifest disregard for the law standard, this Court will do the same.

8

litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden.  T.Co., 592 F.3d at 339.

"It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable."  Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010) (quoting Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (per curiam)); see also Halligan, 148 F.3d at 202 (stating that manifest disregard "clearly means more than error or misunderstanding with respect to the law").  Put another way, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification or a rational basis for the outcome reached.  See T.Co., 592 F.3d at 339; see also In re Arbitration Before New York Stock Exchange, Inc. No. 04-civ-488(RWS), 2004 WL 2072460, at *6 (S.D.N.Y. Sept. 8, 2004) ("Where there is a colorable justification or a rational basis for an award, it is not in manifest disregard of the law.") (internal quotations omitted).

To modify or vacate an award on this ground a court must find that: (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case. Halligan, 148 F.3d at 202; see also Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 28 (2d Cir. 2000).  "Even where explanation for an award is deficient or non-existent, [the Court] will confirm the [the award] if a justifiable ground for the decision can be inferred from the facts of the case."  T.Co., 592 F.3d at 339 (citing Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 548 F.3d 85, 93 (2d Cir. 2008)).

Here, Respondent cannot clear this "high hurdle."  See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. at 671.  "[A]rbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party," see Cat Charter LLC

v. Shurtenberger, 646 F.3d 836, 843 (11th Cir. 2011) (internal quotation omitted). This Court has no intention of indulging Respondent's attempt to re-litigate this case. See Int'l Bhd. Of Teamsters v. Amerijet Int'l, Inc., No. 12-cv-60654, 2013 WL 6388562, at *5 (S.D. Fla. Dec. 5, 2013) ("When two parties voluntarily subject themselves to arbitration, one party should not be allowed to re-litigate the issues presented merely because the decision rendered was unfavorable."). Especially in light of the arbitration clause contained in the Agreement, which specifically states: "Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited." (DE 25, Ex. A).

Respondent's argument for vacatur is two-fold. First, Respondent argues that Petitioner knew of the decline in book value of the Shares prior to confirming the sale with Respondent, the decline in book value was material, and Petitioner had a duty to disclose the information regarding the book value to Respondent prior to completing the sale of Shares to Respondent. Mot., at 6. Second, Respondent argues that because Petitioner failed to disclose this material information, the contract between Respondent and Petitioner to buy the Shares is unenforceable. Id.

The crux of Petitioner's Response is that the information related to the book value of the Shares was public information prior to Respondent's decision to enter into the transaction at issue, and so, Petitioner had no duty to disclose such information to Respondent. Pet'r Resp., at 10-11. Additionally, Petitioner points out that the Agreement between Petitioner and Respondent did not impose any duty regarding Respondent's investment decisions. Id. at 10. The Agreement states that Respondent was "responsible for all investment decisions" and that Respondent "should only make investments if [it] is able to (i) independently assess the risks; (ii) monitor the performance, the financial solvency of the issues and relevant market factors; and (iii) bear the risk of loss of any investments. [Petitioner] and your Relationship Manager have no

duty to . . . monitor these investments on your behalf or alert you of their recommendations regarding the same or similar investments provided to other clients." Pet'r Resp., at 10; Pet., at Ex. A.

All this Court must determine on review is whether there is a justifiable ground (or a rational basis) for the Panel's Award that can be inferred from the facts of the case, such that the Panel did not disregard the law in reaching its Award. See T. Co, 592 F.3d at 339 (citing Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 548 F.3d at 93. The Court finds that there is a legal and factual basis for the Panel's decision in Petitioner's favor.

Specifically, there is a basis for finding that the Petitioner did not have a duty to disclose the decline in IVR's book value to Respondent prior to confirming the sale of IVR shares because of the relationship and Agreement between Petitioner and Respondent, the sophistication of the Parties, and because the information was publicly available. See In re Fuwei Secs. Lit., 634 F. Supp. 2d 419, 437 (S.D.N.Y. 2009) ("The law is clear that a party can be relieved of a duty to disclose when certain developments affecting a corporation become matters of general public knowledge.") (internal quotations omitted); see also Siebert v. Sperry, 586 F.2d 949, 952 (2d Cir. 1978) ("Although the underlying philosophy of federal securities regulations is that of full disclosure, there is no duty to disclose information to one who reasonably should already be aware of it.") (internal citation omitted); see also Iconix Brand Inc. v. Merill Lynch, Pierce, Fenner & Smith Inc., 505 Fed. App'x 14, 17 (2d Cir. 2012). Respondent, who was, according to its Agreement with Petitioner, "responsible for all investment decisions," had access to the publicly available information regarding IVR's book value. See Pet'r Resp., at 11 (stating that IVR's decline in book value was available on the SEC's EDGAR website before Respondent entered into the transaction to purchase the IVR shares, the 8-K filed by IVR as well as a press release issued by IVR prior to the transaction documenting the decline in book value in the

months leading up to the trade, Respondent was investing in IVR prior to the purchase at issue and was aware of IVR's fluctuating book value).[5] Accordingly, this Court finds a rational basis for the Panel's Award.

Furthermore, Respondent's claim that Petitioner "encouraged the Panel to disregard the law" and the Panel did, in fact, disregard the law, is unsubstantiated. Respondent failed to cite this Court to the record of the arbitration hearing where Petitioner made the Panel aware of the applicable law and then affirmatively encouraged the Panel to disregard the law. See Brown v. ITT Consumer Financial Corp., 211 F.3d 1217, 1223 (11th Cir. 2000) (stating that manifest disregard for the law as a bases for vacating an arbitration award is limited to circumstances where the record indicates that the Panel was encouraged to disregard the law and the record does not show that the Panel rejected such a plea). Instead, Respondent makes the blanket statement that "[Petitioner's] argument to the Panel that it had no duty to specifically disclose this information to CRL because it was disclosed in an SEC filing just before the sale was confirmed is without merit and in doing so, [Respondent] respectfully submits, [Petitioner] encouraged the Panel to disregard the law." Mot., at 10. Respondent further states the manifest disregard of the law is evidenced "not only by the Panel's award but also by one of the arbitrator's comments to CRL's expert during the hearing, that essentially indicated a refusal to consider the legal argument that Credit Suisse was a regulated legal entity that owed certain duties to its customers." Id. at 11. These statements are vague and fail to provide a basis for the

---

[5] Petitioner additionally argues in its Response that the decline in IVR's book value was not "material" to Respondent's decision to invest in IVR's shares. Pet'r Resp., at 12. Petitioner states that "[t]here was significant testimony at the hearing questioning the materiality of the book value regarding the trade at issue." Id. at 12. Respondent on the other hand argues that "had [Petitioner] disclosed this information to [Respondent] prior to confirming the sale, Respondent would not have agreed to the purchase." Mot., at 4. Since the Court finds that Petitioner did not have a duty to disclose the publicly available information to Respondent, it does not need to address whether the information was material.

Court to find that Petitioner affirmatively encouraged the Panel to disregard the law. There must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. See Montes v. Shearson Lehman Bros., Inc., 128 F.3d 1456, 1461 (11th Cir. 1997) (quoting O.R. Sec. v. Professional Planning Assoc., 857 F.2d 742, 747 (11th Cir. 1988)).[6] Absent a showing that the Panel was asked to overlook the law, the Court is hard-pressed to find that the Panel disregarded the law.

### III. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Motion to Vacate Arbitration Award (DE 13) is DENIED and the Petition to Confirm Arbitration Award (DE 1) is GRANTED. The Court CONFIRMS the underlying Arbitration Award in all respects, except that Petitioner may file a motion for attorneys' fees within thirty (30) days of the entry of this Order.

The Clerk of Court is ORDERED to CLOSE this case. All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this `29th` day of September, 2014.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:   All counsel of record

---

[6] While Montes is an Eleventh Circuit case, and this Court is applying New York law, Respondent specifically cites to this case for support in its Motion.